UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA LUONGO,<br><br>Plaintiff,<br><br>v.<br><br>VILLAGE SUPERMARKET, INC. and THE SHOP RITE OF GREATER MORRISTOWN,<br><br>Defendants. | Civ. No. 17-0659 (KM)(JBC)<br><br>OPINION |

The gist of this action is an employee's hybrid claim under Section 301 of the Labor Management Relations Act of breach of a collective bargaining agreement and her union's duty of fair representation that she was wrongfully discharged. The defendants filed a motion (ECF no. 4) to dismiss the original complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The plaintiff filed a brief in response (ECF no. 7), but simultaneously filed a proposed amended complaint. (ECF no. 6) The defendants then filed a reply brief (ECF no. 8), which was directed to the allegations of the proposed amended complaint. The Court granted leave to file the amended complaint and deemed the defendants' motion to dismiss to be directed to the amended complaint. (ECF no. 9) The plaintiff, with leave of the court, filed a surreply. (ECF no. 12) The matter is now fully briefed and ripe for decision.

For the reasons stated herein, the motion will be granted in part and denied in part. As to Count One of the amended complaint, the motion is denied; Counts Two and Three of the amended complaint, however, will be dismissed. The dismissals are without prejudice to the submission of a motion to file a second amended complaint within 30 days.

1

# I. The Amended Complaint

The allegations of the amended complaint (ECF no. 6, cited as "AC"), taken as true for purposes of this motion, are as follows.

*Count One:   Breach of collective bargaining agreement and duty of fair representation.*

The plaintiff, Lisa Luongo, was employed by defendants Village Supermarket, Inc., and The Shop Rite of Greater Morristown (together, the "Company") for 33 years. The introductory paragraph announces that the complaint proceeds as a hybrid action against the Company and UFCW Local 1262 (the "Union"), for breach of the duty of fair representation, although the Union is not named as a defendant.

The collective bargaining agreement ("CBA") between the Company and the Union requires just cause for discharge and commits disputes to grievance and arbitration procedures. On March 14, 2016, Luongo was "verbally" discharged. On April 15, 2016, Luongo was "formally" discharged. The reason, she alleges, was that she had eaten a piece of cookie, worth 35 cents, from the supermarket's inventory. Other employees routinely did the same, without any sanction being applied.

On the day of the informal discharge, March 14, 2016, Luongo asked her union representative, Carmen Pizzi, to file a grievance. On March 22, 2016, having heard nothing, Luongo through her counsel filed a formal written grievance. (A copy of the Notice of Grievance and Notice of Intent to Arbitrate is attached to the amended complaint. (ECF no. 6 at 11)) The Union did not follow the grievance procedure, investigate, or give Luongo the opportunity to protest her discharge.

Luongo alleges on information and belief that her complaints of harassment by a fellow employee gave rise to hostility on the part of both the Company and the Union. She also states that the Company and the Union also had an understanding that they would limit the number of grievances pursued.

2

*Count Two: Breach of contract based on employee manual*

Through an Employee Manual disseminated widely to employees, and long-standing practices and procedures in the workplace, the Company entered into an implied contract with Luongo. That contract included a commitment to abide by certain procedures, including the use of corrective action, prior warnings, and consistency in the application of discipline to employees. The discharge of Luongo without warning or corrective action breached that contract.

*Count Three: Breach of implied covenant of good faith and fair dealing*

By arbitrarily and capriciously singling out Luongo to be terminated for violation of a policy that had never before been strictly enforced, the Company breached the implied covenant of good faith and fair dealing inherent in every contract, including the CBA and the Employee Manual.

## II. Standard on a Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual

allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).[1]

The Court in considering a Rule 12(b)(6) motion is confined to the allegations of the complaint, with certain exceptions:

> "Although phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)."

*In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016). *See also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.' ") (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

---

[1] The Company's reply brief devotes an entire argument point to the proposition that the plaintiff had provided an "incorrect description of the standard on a motion to dismiss," in that she had cited case law predating *Twombly* and *Iqbal*. (ECF no. 8, at 8) The Company's own moving brief, however, although it cites *Twombly* and *Iqbal*, opens with a quotation of the "no set of facts" standard of *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). (ECF no. 4-3 at 8) That is the very standard that was rejected, by name, in *Twombly*. 550 U.S. at 561–63.

A copy of the collective bargaining agreement ("CBA") is attached to the Defendants' reply submission. (ECF no. 8-1) The CBA is integral to and explicitly relied on by Counts One and Three of the amended complaint. A copy of the Village Supermarket Associate Handbook ("Employee Handbook") is attached to the Defendants' motion. (ECF no. 4-1) The Employee Handbook is integral to and explicitly relied on by Counts Two and Three of the amended complaint. I therefore consider both documents on this Rule 12(b)(6) motion.

## III. Analysis

### A. "Hybrid" Claim

Count One asserts a hybrid claim. Such a claim is called "hybrid" because the employee alleges under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, that the employer breached the CBA, and also alleges that that the Union breached its duty of fair representation ("DFR") by failing to press the employee's grievance. *See, e.g., Jimenez v. GCA Servs. Grp., Inc.*, No. CV 16-1871, 2016 WL 6877738, at *2 (D.N.J. Nov. 21, 2016) (Vazquez, J.). The requisites of such a hybrid § 301/DFR action have been cogently summarized by Judge Walls:

> The two claims ... are inextricably linked. "To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to contract but also carry the burden of demonstrating a breach of duty by the Union." *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 165, 103 S. Ct. 2281, 2290, 76 L.Ed.2d 476 (1983) (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S. Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976)). This is so because a hybrid suit is essentially a challenge to private settlements reached pursuant to collective bargaining agreements. *See id.*
>
> "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S. Ct. 903, 916, 17 L.Ed.2d 842 (1967). If a union arbitrarily ignores a meritorious grievance or "process[es] it in perfunctory fashion," the Union may be found to

5

have violated its implied statutory obligation. *Id.* at 191, 87 S. Ct. at 917. This does not mean that an employee has an absolute right to have his grievance taken to arbitration. *See id.; see also Fajardo v. Foodtown Supermarkets*, 702 F. Supp. 502, 506 (D.N.J.1988). Rather, it means that an employee will have a claim against his union for "conduct which is so acutely perfunctory that it fails to attain a basic level of acceptable performance by a collective bargaining unit." *Rupe v. Spector Freight Systems, Inc.*, 679 F.2d 685 (7th Cir. 1982).

*Pagano v. Bell Atlantic-New Jersey, Inc.*, 988 F. Supp. 841, 845 (D.N.J. 1997).[2]

### 1. Statute of Limitations

Defendants first assert that the hybrid §301/DFR claim of Count One is time-barred under the applicable six-month statute of limitations. *Id.* at 845 (citing *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 170–71 (1983)).

The statute of limitations is technically an affirmative defense which must be pled in an answer. *See* Fed. R. Civ. P. 8(c)(1). Nevertheless, on a Rule 12(b)(6) motion, a complaint may be dismissed on statute of limitations grounds, but "only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, __ F.3d __, 2017 WL 2112308 at *4 (3d Cir. May 16, 2017) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)); *see also Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017). To be sustainable, such a dismissal must consider the applicability of tolling doctrines. *See Wisniewski*, 2017 WL 2112308 at *4 (reversing dismissal and remanding for consideration of whether time spent in exhausting administrative remedies tolled the § 1983 limitations period).

It is generally the employee's knowledge of the union's failure to pursue the grievance that sets the six-month statute of limitations running:

> The limitations period "begins to run 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.' " *Hersh v. Allen Prods.*

---

[2] The Union is not separately named as a defendant. I interpret the allegation that the Union breached its duty of fair representation as a necessary component of Luongo's hybrid claim against her employer, the Company.

> Co., Inc., 789 F.2d 230, 232 (3d Cir.1986) (quoting *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S. Ct. 976, 79 L.Ed.2d 214 (1984)); *see also Vadino v. A. Valey Engineers*, 903 F.2d 253, 260 (3d Cir.1990). In a claim charging failure to vigorously prosecute a grievance, this period commences "when 'the plaintiff receives notice that the union will proceed no further with the grievance.'" *Hersh*, 789 F.2d at 232 (quoting *Bruch v. United Steelworkers of America*, 583 F. Supp. 668, 670 (E.D.Pa.1984) ); *see also Vadino*, 903 F.2d at 260. The statute of limitations for the claim against the employer is also "tolled until it was or should have been clear to the employee that the union would not pursue the grievance." *Vadino*, 903 F.2d at 261.

*Pagano*, 988 F. Supp. at 845–46. *See also Albright v. Virtue*, 273 F.3d 564, 576 (3d Cir. 2001).[3]

The United States Court of Appeals, reversing summary judgment for an employer, emphasized that the inquiry is fact-intensive:

> This approach has been characterized as "court-inspired vagueness," and makes these cases difficult. [quoting *Scott v. Local 863, Int'l of Teamsters*, 725 F.2d 226, 230 (1984)]. Most notably, courts are faced with the challenge of determining when the futility of appeals was or should have become "clear" to the plaintiffs, thereby triggering the statute of limitations. As noted in *Scott*, the futility of further union appeals may not be clear to employee plaintiffs because "union officials may well be equivocal or contradictory in their communications to dissatisfied members and may send such communications through persons within the internal union hierarchy whose authority to bind the union is at best hazy." 725 F.2d at 230 (Becker, J. concurring).

*Albright*, 273 F.3d at 572.

The amended complaint alleges that Luongo was "verbally terminated" on March 14, 2016, and requested the same day that her union representative file

---

[3] Particularly as to a hybrid claim against the employer only, like the one here, the statute might be considered to run from the employer's breach of the CBA, rather than the union's later failure to pursue the grievance. The Third Circuit has rejected that approach as unworkable. *See Albright*, 273 F.3d at 576 (citing *Vadino*, 903 F.2d at 261).

7

a grievance. (AC ¶¶ 7, 8) As of March 22, 2016, she had received no response from the union, and so filed a Notice of Grievance and Notice of Intent to Arbitrate on her own. (AC ¶ 9) On April 15, 2016, she was "formally discharged." (AC ¶ 10) The original complaint in this action was filed in state court nearly eight months later, on December 9, 2016. (ECF no. 1 at 2, 7) The Company asserts that the CBA, article 14(d), requires that the union file a grievance within ten days after the date of discharge.

The issue of when the plaintiff knew, or should have known, that the grievance procedure had become hopeless cannot be settled from the face of the complaint. *Albright,* considering the summary judgment record compiled by the parties, concluded that there was an issue of fact: "[I]t does not appear from the record that there exists a date certain on which we can say the statute of limitations began to run; it is not clear that the plaintiffs had 'notice that the union w[ould] proceed no further with the grievances.'" 273 F.3d at 575 (quoting *Hersh,* 789 F.2d at 232). *A fortiori* that is true here, in the context of a motion to dismiss.

The case cited by the Company, *Scott v. Cont'l Airlines, Inc.*, No. CIV.A. 13-3008 CCC, 2014 WL 345273 (D.N.J. Jan. 30, 2014), is not to the contrary. There, Judge Cecchi granted a motion to dismiss, but only where it was undisputed that "Plaintiff received a letter on July 26, 2012 informing her that the Union decided to withdraw her grievance. (Compl.5.)" *Id.* at *3. (The letter was attached to the complaint as an exhibit. *Id.* at *3 n.3.)

In her surreply, Luongo attaches additional correspondence purporting to demonstrate that the grievance process went on, and also cites CBA art. 14(a)(4), which grants the union 90 days to notify the employer that it may go forward to arbitration. I note this, not to drag extrinsic evidence into a Rule 12(b)(6) motion, but to emphasize that the statute of limitations issue may well depend on such extrinsic facts and issues of contractual interpretation. As noted above, the statute of limitations is not an element of a claim, but rather an affirmative defense that the defendant must plead and prove. In a very clear

case, it may provide the basis for a Rule 12(b)(6) dismissal. But the wisdom of the usual approach—decision of statute of limitations issues on a motion for summary judgment—is apparent here.

The motion to dismiss Count One on statute of limitations grounds is therefore denied.

### 2. *Exhaustion of remedies*

The same reasoning applies to the Company's argument that Luongo failed to exhaust the CBA-mandated grievance and arbitration procedures before bringing suit. The Company asserts that "'to maintain a § 301 action on a labor contract, an employee must first exhaust the grievance and arbitration provisions of a contract.'" (Reply Br. at 6–7, quoting *Carpenter v. Wawa*, Civ. No. 09-2768, 2009 WL 4756258, at *3 (E.D. Pa. Dec. 3, 2009) (quoting *Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329, 334 (3d Cir. 1985) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S. Ct. 614 (1965))).

The complaint, says the Company, alleges exhaustion of remedies only in conclusory terms. The amended complaint does, however, allege that the plaintiff attempted to pursue grievance procedures, which were thwarted by the Union's inaction. And it alleges that she "has exhausted any internal union remedies that she could possibly have obtained." (AC ¶ 25)

That is sufficient for purposes of this complaint. The facts surrounding the grievance procedure can only be established by extrinsic evidence, and must await summary judgment. The motion to dismiss Count One on exhaustion grounds is therefore denied.

### B. Breach of Contract (Employee Manual)

Under New Jersey law, a breach of contract claim has three essential elements: (1) the existence of a valid and enforceable contract, (2) a breach of that contract, and (3) damages. *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007); *accord Frederico v. Home Depot*, 507 F.3d 188 (3d

Cir. 2007). As to Count Two, the Defendants argue that the breach of contract claim founders on the first element: the existence of an enforceable contract. The Employee Manual, they say, is not a binding contract, and in fact it clearly and conspicuously disclaims contractual status. The plaintiff does not respond to this argument. Nevertheless I analyze the point briefly, and find myself in agreement with the defendants.

"In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine." *Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 397, 643 A.2d 546, 552 (1994) (citation omitted). "An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise." *Id.* Such an agreement may be found "if a plaintiff can prove that an employment manual containing job-security and termination procedures could reasonably be understood by an employee to create binding duties and obligations between the employer and its employees." *Id.* at 399, 643 A.2d at 533. In such a case, the employment manual is treated as a contract of employment: "[T]he manual will constitute, in effect, a unilateral offer to contract that an employee may accept through continued employment." *Id.* (citing *Woolley v. Hoffmann-La Roche, Inc.*, 99 N.J. 284, 309, 491 A.2d 1257, 1270, *modified*, 101 N.J. 10, 499 A.2d 515 (1985)).

Employers who are wary of creating contractual rights, however, may protect themselves. Many have included disclaimers in their employment manuals, and such disclaimers have been found effective. It is well established that an implied contract based on an employment manual may be negated by the inclusion of a "clear and prominent" disclaimer. *Id.* at 400, 643 A.2d at 555 (citing *Woolley*, 99 N.J. at 285); *see also Polonsky v. Verizon Communications Corp.*, No. 09-CV-4756, 2011 WL 5869585, at *9 (D.N.J. Nov. 22, 2011); *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 643 A.2d 554, 559–60 (1994). To be effective, a disclaimer must be "expressed in language such that no one could reasonably have thought [the manual] was intended to create legally

binding obligations." *Nicosia*, 136 N.J. at 413, 643 A.2d at 560 (internal quotation omitted). "Such a disclaimer serves 'to provide adequate notice to an employee that she or he is employed only at will and is subject to termination without cause.'" *Armato v. AT & T Mobility LLC*, A-2754-11T2, 2013 WL 149671 (N.J. Super. Ct. App. Div. Jan.15, 2013) (quoting *Nicosia*, 136 N.J. at 412, 643 A.2d 554).

The Employee Manual relied upon by Luongo here contains just such a prominent disclaimer, set off and printed on a single page:

> **IMPORTANT NOTICE- READ THIS**
>
> This Village Super Market, Inc. and Associates Handbook is for your information only. It is NOT an employment contract. The rules and policies contained in this handbook may be changed at any time by Village Super Market, Inc. without prior notice to anyone. The interpretation of these rules will be solely by the Village Super Market, Inc. Also, remember that there are many other rules that apply to you and your job which are not contained in this handbook.
>
> This handbook is not a binding contract. Neither this handbook, nor anything else you receive in writing from Village Super Market, Inc., nor anything you are told by someone from Village Super Market, Inc., is a promise to you of a job with Village. You are not guaranteed that you will be hired or that you will continue to be employed by Village under any circumstances.
>
> You may quit Village at any time for any reason, with or without notice. You may be fired from Village at any time for any reason, with or without notice. The only exceptions to your right to quit or Village's right to fire you at any time for any reason with or without notice would be in the form of a written agreement such as a collective bargaining agreement.
>
> This notice is important. If you do not understand this notice, you must ask your Manager for help now. We will be happy to explain anything to you that you do not understand. Be sure to get help if you need it because you will be held responsible to understand this notice, as well as to understand and obey the contents of this handbook.

Employee Handbook at 3.

"When the language and placement of a disclaimer is not disputed, as in this case, the sufficiency of the disclaimer can be decided as a matter of law." *Warner v. Fed. Express Corp.*, 174 F. Supp. 2d 215, 228 (D.N.J.2001) (citations omitted). *See also Darling v. Wegmans Food Markets, Inc.*, No. CIV. 13-5885 FLW, 2014 WL 4544095, at *5 (D.N.J. Sept. 12, 2014) ("Plaintiff's only response in her brief as to what additional discovery may be necessary is that Plaintiff would seek discovery of the company policy manual. But Wegmans has produced the material documents in this case—namely, the employee handbook and the policy manual—and Plaintiff's claims can be adjudicated based on those documents and undisputed facts.")

Although those cases decided summary judgment motions, they relied on the face of the manual and the disclaimer; in essence, these courts read the manual just as an employee would. Here, there is no dispute as to the genuineness of the Employee Manual, which is cited and relied upon in the complaint. Particularly in light of the plaintiff's failure to make any argument or assertion to the contrary, I find the language of the disclaimer in the Employee Manual to be sufficiently plain and conspicuous.

As for plainness, as I stated in an earlier case, "the language of the disclaimer is clear. ... The disclaimer does not contain legalese or the kind of confusing language found to render a disclaimer ineffective in *Nicosia, supra.*" *Michaels v. BJ'S Wholesale Club, Inc.*, No. CIV. 2:11-05657 KM, 2014 WL 2805098, at *14 (D.N.J. June 19, 2014), *aff'd*, 604 F. App'x 180 (3d Cir. 2015). The two initial sentences state: "This Village Super Market, Inc. and Associates Handbook is for your information only. It is NOT an employment contract." The first sentence of the second paragraph states: "This handbook is not a binding contract." The third paragraph states: "You may be fired from Village at any time for any reason, with or without notice." The Notice explicitly informs the employee that her rights against the Company may be found in the CBA. Twice, it stresses that the notice is important, and it urges that the employee seek help if she does not understand it.

As for conspicuousness, as I stated in *Michaels,* "the disclaimer is sufficiently prominent. The "prominence" requirement can be met in many ways. Basically, a disclaimer must be separated from or set off in a way to attract attention.' *Nicosia,* 136 N.J. at 415, 643 A.2d at 561." 2014 WL 2805098, at *15. This disclaimer has its own entry—the initial entry in fact—in the Table of Contents. It appears alone, without any other material, on the first page following the Table of Contents. It bears a title, printed in a large sans-serif font that contrasts with the type used in the text of the Handbook: **IMPORTANT NOTICE- READ THIS.**

Seemingly no two disclaimers are alike, but this one resembles those found sufficient in the case law. *See, e.g., Darling,* 2014 WL 4544095, at *4 ("Each handbook clearly states at the outset that it should not be viewed as a contract, does not alter the 'at-will' status of its employees, and that employees 'may be terminated at any time, by either party, for any reason or no reason and with or without notice.' . . . . Such a disclaimer easily meets the 'clear and prominent' standard articulated in *Woolley.*") (citing *Wiegand v. Motiva Enterprises,* LLC, 295 F. Supp. 2d 465, 478 (D.N.J. 2003) (finding there was "no question" that an employer's disclaimer on an employment manual precluded the manual from being construed as an employment contract where the disclaimer stated, "THIS HANDBOOK ... DOES NOT CONSTITUTE AN EMPLOYMENT CONTRACT" and that "THE COMPANY IS ... FREE TO TERMINATE THE EMPLOYEE AT ANY TIME FOR ANY REASON.")); *Lopez v. Lopez,* 997 F. Supp. 2d 256, 277 (D.N.J. 2014) ("Verizon's Code of Conduct explicitly states that it is 'not an employment contract' and that it does not 'give [employee] rights of any kind.' .... The disclaimer is located in the introductory section of the Code of Conduct under the heading 'Legal Notice.'"); *Warner v. Federal Express Corp.,* 174 F. Supp. 2d 215, 226-27 (D. N.J. 2001) (where handbook stated, "'[t]he Company wants you to understand that The Federal Express Employee Handbook should not be considered a contract of employment," and other document confirmed that employee "understand[s]

13

that The Federal Express Employee Handbook contains guidelines only and that the Company can modify this publication by amending or terminating any policy, procedure, or employee benefit program at any time,'" this language "ma[de] the employee aware that the provisions of the handbook are only guidelines and that the handbook does not establish a contract of employment ... [or] provide any contractual rights.").

In short, reading the disclaimer through the eyes of an employee, I find it clear and prominent, and I hold that it is effective as a matter of law. The Employee Handbook is not a binding contract, and Count Two (breach of contract) is dismissed.[4]

### C. Implied covenant of good faith and fair dealing (Employee Manual and CBA)

Count Three asserts a claim of breach of the implied covenant of good faith and fair dealing with respect to the Employee Manual. The amended complaint adds a similar allegation with respect to the CBA.

Under New Jersey law, every contract contains an implied covenant of good faith and fair dealing. *See Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575 (N.J. 1997). That implied covenant dictates that a party, even if it does not breach an express term, cannot act in bad faith to interfere with the other's ability to enjoy the fruits of the contract. *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001); *see also Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225, 864 A.2d 387 (2005).

To recover for breach of the implied covenant, a plaintiff must prove that: (1) a contract exists between the parties; (2) the plaintiff performed under the

---

[4] That threshold ruling moots questions of contract interpretation. To state a *Woolley* breach of contract claim, a plaintiff must point to some language in the manual that contains "an express or implied promise concerning the terms and conditions of employment." *See Witkowski*, 643 A.2d at 552; *Doll v. Port Auth. Trans-Hudson Corp.*, 92 F. Supp. 2d 416, 423 (D.N.J. 2000) The amended complaint does not point to any particular portion of the Employee Manual that guarantees "corrective action, prior, warning, and consistency in the application of discipline to its employees." (AC Count II ¶ 1)

14

terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages. *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, 2014 WL 3853900, at *3 (D.N.J. Aug. 5, 2014) (citing *Wade v. Kessler. Inst.*, 778 A.2d 580, 586 (N.J. Super. Ct. App. Div. 2001), *aff'd as modified*, 798 A.2d 1251 (N.J. 2002)); *Pactiv Corp. v. Perk-Up, Inc.*, 2009 WL 2568105, at *12-13 (D.N.J. 2009).

### 1. Employee Manual

As for the Employee Manual, the Count Three claim of breach cannot stand. Breach of the implied covenant of good faith and fair dealing is not a free-standing cause of action; such a covenant is an implied covenant *of a contract.* "[I]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Noye v. Hoffmann-La Roche Inc.*, 238 N.J. Super. 430, 433, 570 A.2d 12, 14 (App. Div. 1990); *accord Obendorfer v. Gitano Group*, 838 F. Supp. 950, 954 (D.N.J. 1993). Here, as I have already found, the Employee Manual is not a valid and enforceable contract; it contains no contractual covenants, whether express or implied. To that extent, then, Count Three is dismissed.

### 2. Collective Bargaining Agreement

What remains of Count Three, then, is a claim of breach of the implied covenant of good faith and fair dealing in relation to the CBA. That state-law claim cannot be grafted onto the CBA, defendants say, without running afoul of the broad preemptive effect of federal labor law. The plaintiff has made no response to this argument.

"Section 301 of the LMRA preempts state law claims that allege violations of a collective bargaining agreement." *Pagano*, 988 F. Supp. at 846–47 (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962)). That preemptive effect also encompasses any state-law claim that is "substantially dependent upon analysis" of the terms of a CBA. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S. Ct. 1904, 1915 (1985).

Thus courts have repeatedly held that claims of breach of the implied covenant of good faith and fair dealing within a CBA are preempted by Section 301. *See, e.g., Guerrero v. Hovensa LLC*, 259 F. App'x 453, 458 (3d Cir. 2007) (finding preemption because "[w]hether there is an 'implied contractual duty,' will necessarily require an analysis of the terms of the CBA to determine if the contract as a whole obliges the employer to act with good faith and fair dealing."); *Pagano*, 988 F. Supp. at 846; *Henderson v. Merck & Co.*, 998 F. Supp. 532, 540 (E.D. Pa. 1998) ("[Employee] Henderson's claim for breach of the implied covenant of good faith and fair dealing is also completely preempted under § 301.") (citing *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1000 (9th Cir.1987) (holding that the implied covenant tort is waived where the collective bargaining agreement contains terms concerning job security); *Chmiel v. Beverly Wilshire Hotel*, 873 F.2d 1283 (9th Cir.1989) (holding breach of covenant of good faith and fair dealing preempted by § 301)). *Cf. Allis-Chalmers*, 471 U.S. at 219, 105 S. Ct. at 1915 ("Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a good-faith obligation under a contract, the arbitrator's role in every case could be bypassed easily if § 301 is not understood to pre-empt such claims.")

I read Count Three as just such a state-law claim of breach of the covenant of good faith and fair dealing that is supposedly implicit in the CBA. As such, it is preempted by Section 301 and must be treated as a Section 301 claim. So viewed, even if it were viable, it would be superfluous. The motion to dismiss the CBA component of Count Three is therefore granted.

## CONCLUSION

For the foregoing reasons, the defendants' Rule 12(b)(6) motion (ECF no. 4) to dismiss the complaint, now deemed a motion to dismiss the amended complaint (ECF no. 6) for failure to state a claim, is **GRANTED IN PART AND DENIED IN PART**, as follows:

(a) The motion is granted as to Counts Two and Three of the amended complaint, which are dismissed.

(b) The motion is denied as to Count One of the amended complaint.

The dismissals of Counts Two and Three are without prejudice to the submission of a motion to file a second amended complaint within 30 days. Any such motion must comply with newly-amended Local Rule 15.1.

Dated: June 2, 2017

_____
**Kevin McNulty**
**United States District Judge**